Guy Ruttenberg, Bar No. 207937
guy@ruttenbergiplaw.com
Bassil Madanat, Bar No. 285280
bassil@ruttenbergiplaw.com
RUTTENBERG IP LAW, A PROFESSIONAL CORPORATION
1801 Century Park East, Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270
Facsimile: (310) 627-2260
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH NEEV, *an individual*,<br><br>Plaintiff,<br><br>v.<br><br>ALCON LABORATORIES, INC., *a Delaware Corporation*, and<br><br>WAVELIGHT, GmbH *a German Corporation*<br><br>Defendants. | CASE NO.: 15-cv-336<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>JURY TRIAL DEMANDED |

# COMPLAINT

Plaintiff Dr. Joseph Neev by and through his undersigned attorneys, complains as follows:

## Nature of Action

1. Dr. Neev, a physicist, is the inventor behind several revolutionary applications of femtosecond lasers in the ophthalmic, dental and cosmetic fields.

2. Defendants Alcon Laboratories, Inc. ("Alcon Labs") and WaveLight GmbH ("WaveLight") (collectively, "Defendants") have knowingly, blatantly and willfully misappropriated Dr. Neev's intellectual property rights.  Through their LASIK products and services, Defendants are willfully infringing Dr. Neev's patent and refuse to pay for the technology.  Both Defendants are direct or indirect subsidiaries of Alcon, Inc., a multi-national company with annual revenues in excess of $10 billion.  Dr. Neev has been the victim of the mega-corporations' gluttonous scheme to take what they do not deserve.

3. By this action, Plaintiff seeks to put a stop to the Defendants' unlawful conduct and obtain compensation for the violations that have occurred thus far.

## Parties

4. Plaintiff Dr. Neev is an individual residing in Laguna Beach, California.

5. Defendant Alcon Labs is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business in Fort Worth, Texas.

6. On information and belief, Defendant WaveLight is a corporation organized and existing under the laws of Germany, having a principal place of business in Erlangen, Germany.

## Jurisdiction and Venue

7. This Court has subject matter jurisdiction for this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338.  The amount in controversy exceeds $75,000.00.

8. This Court has personal jurisdiction over Defendant Alcon Labs because, among other things, Alcon Labs transacts business by facilitating sales and maintenance

of the infringing products in the State of California, as well as by maintaining an agent for service of process in the State of California.  In addition, Defendant Alcon Labs has willfully infringed, either directly or indirectly, the patent-in-suit owned by Dr. Neev, who resides in the State of California, thereby intentionally directing harm to a California resident.

9. This Court has personal jurisdiction over Defendant WaveLight because, among other things, WaveLight acts through its agents to transact business in the State of California.  On information and belief, WaveLight manufactures products with the intention of selling and marketing those products in California through an affiliated company, namely Alcon Labs.  WaveLight has also willfully infringed, either directly or indirectly, the patent-in-suit owned by Dr. Neev, who resides in the State of California, thereby intentionally directing harm to a California resident.  Indeed, WaveLight's infringing products are sold and maintained in the State of California.

10. The Court also has personal jurisdiction over both Defendants because they represent themselves as divisions of Alcon, Inc., which conducts extensive business in the State of California and has a permanent presence in this District.

11. Venue is proper under 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because, among other things, Alcon Labs and WaveLight transact business within this District, facilitate offers for sale of infringing products in this District, and/or facilitate infringing uses of the accused products in this District.

**Factual Background**

12. Dr. Neev's career in advancing the use of laser technology to optimize surgical applications began in the late 1980s.  His contributions to augment the use of ultrashort pulse lasers is well-recognized in the industry, and can be seen through his numerous publications and his affiliation with reputable institutions such as Lawrence Livermore National Laboratory, the University of California at Irvine, the Beckman Laser Institute, the University of California at San Diego, the University of California at

San Francisco, Cornell University School of Medicine, the University of Texas at Austin, Stanford University School of Medicine and Duke University School of Medicine.

### *The Patent at Issue*

13. A reflection of Dr. Neev's innovative work, U.S. Patent No. 6,482,199 (the "'199 Patent"), entitled "Method and Apparatus for High Precision Variable Rate Material, Removal and Modification," was duly issued to Dr. Neev by the United States Patent and Trademark Office on November 19, 2002. Dr. Neev is the only listed inventor.

14. Dr. Neev holds all interest in and title to the '199 patent. Dr. Neev owned the '199 patent throughout the period of the Defendants' infringing acts and still owns the patent.

15. Dr. Neev has provided Defendants with notice of the infringement. Dr. Neev has complied with the statutory marking requirement by requiring all licensees and sub-licensees to mark in accordance with the statutory marking requirements.

16. The '199 patent was previously the subject of an *ex parte* reexamination, the certificate of which issued on October 26, 2010.

17. A true and correct copy of the '199 Patent post-reexamination is attached herein as Exhibit A.

18. The Defendants are and have been aware of the '199 Patent, including the claims issued through reexamination. The Defendants and/or their affiliates were aware of the reexamination proceedings involving the '199 Patent as the proceedings progressed. The Defendants and/or their affiliates assisted Dr. Neev in responding to invalidity arguments raised during the reexamination procedures and in drafting new claims.

19. Claim 80 of the '199 Patent recites the following limitations:

> A method for a controlled, variable rate material modification by a pulsed electromagnetic radiation beam irradiated on a target region of a target material, interactions between the pulsed electromagnetic radiation beam and the material providing a

modification threshold volumetric power density, the method comprising:

providing a source capable of generating an output beam comprised of a sequence of electromagnetic pulses, each electromagnetic pulse having a pulse duration in a range of approximately 1 femtosecond to approximately 100 millisecond;

determining at least one characteristic of the target material;

operating the source and manipulating beam parameters based on the determined characteristic of the target material such that a plasma is created at the target region, the created plasma providing shielding to the target region so that the material is not modified outside a volume of the target region, and such that a deposited volumetric power density of the beam within a volume of the target region is greater than the threshold volumetric power density, wherein control of the deposited volumetric power density is achieved by varying at least one of the following beam parameters:

a beam spot size at the target region, a duration of the electromagnetic pulses, an energy of the electromagnetic pulses, or a wavelength of the electromagnetic pulses, or by spatially or temporally varying at least one of an absorption characteristic of the target material at the target region or a scattering characteristic of the target material at the target region;

allowing interaction energy transients caused by the electromagnetic pulses to substantially decay so that material modification is effected permitting the controlled, variable rate material modification, the material modification including at least one of the following material modifications:

chemical changes of the material, physical changes of the material, changes to viscoelastic properties of the material, changes to optical properties of the material, thermal properties of the material, chemical and physical breakdown of the material, disintegration of the material, ablation of the material, melting of the material, and vaporization of the material;

operating the source at a pulse repetition rate greater than 0.1 pulses per second until a target volume of the target material in the target region has been modified.

*Defendants' Infringing Products & Conduct*

20. On information and belief, Defendant Alcon Labs and Defendant WaveLight are subsidiaries of Alcon, Inc. The three entities are part of a global healthcare conglomerate specializing in eye care products.

21. In the past decade, Alcon, Inc., Alcon Labs and/or their affiliates have acquired numerous medical equipment companies in an effort to expand their eye care portfolio.

22. Alcon, Inc. or another affiliate of Defendant Alcon Labs acquired WaveLight AG, a Germany company, in or around November 2007.

23. On information and belief, WaveLight is the successor company to WaveLight AG. As a subsidiary of Alcon, Inc., WaveLight continues to develop and manufacture various ophthalmic medical devices, including the WaveLight FS200 laser system.

24. In or around October 2010, Alcon Labs received FDA approval to market its WaveLight FS200 femtosecond laser (the "WaveLight FS200").

25. On information and belief, Defendants began marketing and selling the WaveLight FS200 in the United States in late 2010 or early 2011.

26. The WaveLight FS200 is an ophthalmic surgical femtosecond laser approved by the FDA for use in the creation of a corneal flap in patients undergoing LASIK surgery.

27. The WaveLight FS200 laser is used by eye surgeons and/or other individuals to remove, ablate and/or modify ophthalmic tissue.

28. The WaveLight FS200 is a pulsed laser used by eye surgeons and/or other individuals during LASIK procedures to ablate tissue.

29. When used for its intended purpose, the WaveLight FS200 normally uses a pulsed, electromagnetic radiation beam that operates with a small focus to ensure accurate flap creation in the cornea of the eye.

COMPLAINT FOR PATENT INFRINGEMENT
6

30. When used for its intended purpose, the WaveLight FS200 normally operates such that each pulse from the laser beam has a duration of at least 1 femtosecond but less than 100 milliseconds.

31. When used for its intended purpose, the WaveLight FS200 laser beam normally operates at a laser repetition rate of at least 10 pulses per second.

32. The WaveLight FS200 system employs an adjustable joystick that can accommodate either hand, as well as a motorized laser arm that moves in three axes for precise docking.

33. When the WaveLight FS200 is used for its intended purpose, the applied pulse of the laser normally induces optical breakdown that creates plasma within the focus area of the eye.

34. When the WaveLight FS200 is used for its intended purpose, the energy delivered per laser pulse, when properly focused inside the corneal stroma, can typically generate local ablation and a small amount of microplasma.

35. When the WaveLight FS200 is used for its intended purpose, plasma that is formed from the laser pulse(s) normally provides shielding or protection to areas surrounding the target tissue, such that tissue outside of the target area is not modified.

36. The WaveLight FS200 operates such that molecules in the eye can be precisely separated with virtually no transfer of heat and with virtually no impact on surrounding tissue.

37. Use of the WaveLight FS200 calls for determining to what extent, if any, chromatic dispersion is occurring within the cornea of a patient's eye when the laser is in use.

38. Use of the WaveLight FS200 during a LASIK procedure typically involves determining and accommodating for the corneal thickness of a patient prior to or while the laser is in use.

39. On information and belief, use of the WaveLight FS200 during a LASIK procedure typically involves determining intraocular pressure of a patient prior to or while the laser is in use.

40. The WaveLight FS200 utilizes "beam control check" to accommodate a wide range of patient variables, including Z-position variances.

41. The WaveLight FS200 enables calibration of the laser beam for each patient interface that is used.

42. The WaveLight FS200 enables the laser beam parameters to be calibrated or manipulated based on a characteristic of the patient's eye, such as corneal thickness, chromatic dispersion, Z-position and/or intraocular pressure.

43. Manipulation of the beam parameter(s) of the WaveLight FS200 during a LASIK procedure can include manipulation of the spot size, depth and/or energy delivery of the laser beam.

44. When the WaveLight FS200 is used for its intended purpose, modification or ablation of target eye tissue by the electromagnetic pulses of the laser beam occurs such that thermal energy resulting from each pulse decays or dissipates after each said pulse.

45. Target tissue modifications resulting from use of the WaveLight FS200 may include separation of tissue or vaporization of small volumes of tissue in the eye.

46. Defendants offer the WaveLight FS200 for sale through regional vendors.

47. Consumers can purchase a WaveLight FS200 through at least one online retailer.

## COUNT I

### Infringement of the '199 Patent

48. Plaintiff restates and incorporates by reference his previous allegations above, as if fully set forth herein.

49. Defendants have infringed and continue to infringe one or more claims of the '199 Patent by using, selling and/or offering to sell, in the United States and/or

through importation into the United States, one or more products, including the WaveLight FS200 laser for LASIK procedures.  Defendants' infringements have been both direct and indirect, including contributory infringement and inducement of infringement.  Defendants' infringing activities violate 35 U.S.C. §§ 271(a) through (c).

50. The WaveLight FS200 laser enables a user to perform a method for a controlled, variable rate material modification by a pulsed electromagnetic radiation beam irradiated on a target region of a target material, interactions between the pulsed electromagnetic radiation beam and the material providing a modification threshold volumetric power density.

51. The WaveLight FS200 laser enables a user to perform a method for a controlled, variable rate material modification in part by providing a source capable of generating an output beam comprised of a sequence of electromagnetic pulses, each electromagnetic pulse having a duration in a range of approximately 1 femtosecond to approximately 100 milliseconds.

52. Use of the WaveLight FS200 involves determining at least one characteristic of the target material prior to or during use of the laser.

53. The WaveLight FS200 laser enables a user to operate the source and manipulate beam parameters based on the determined characteristic of the target material such that a plasma is created at the target region, the created plasma providing shielding to the target region so that the material is not modified outside a volume of the target region, and such that a deposited volumetric power density of the beam within a volume of the target region is greater than the threshold volumetric power density.

54. The WaveLight FS200 laser enables a user to operate the source and manipulate beam parameters such that control of the deposited volumetric power density is achieved by varying at least one of the following beam parameters: a beam spot size at the target region, a duration of the electromagnetic pulses, an energy of the electromagnetic pulses, or a wavelength of the electromagnetic pulses, or by spatially or

1  temporally varying at least one of an absorption characteristic of the target material at the
2  target region or a scattering characteristic of the target material at the target region.

3      55. The WaveLight FS200 laser allows for interaction energy transients caused
4  by the electromagnetic pulses to substantially decay so that material modification is
5  effected permitting the controlled, variable rate material modification.

6      56. Use of the WaveLight FS200 laser during LASIK procedures results in at
7  least one of the following material modifications: chemical changes of the material,
8  physical changes of the material, changes to viscoelastic properties of the material,
9  changes to optical properties of the material, thermal properties of the material, chemical
10 and physical breakdown of the material, disintegration of the material, ablation of the
11 material, melting of the material, and vaporization of the material.

12     57. When used for its intended purpose, the WaveLight FS200 laser enables a
13 user to operate the source at a pulse repetition rate greater than 0.1 pulses per second until
14 a target volume of the target material in the target region has been modified.

15     58. Defendants' infringements of the '199 Patent have been and continue to be
16 intentional, willful, and without regard to Plaintiff's rights.

17     59. Defendants have actively induced and continue to actively induce, eye
18 surgeons, other medical professionals and/or other individuals to infringe the '199 Patent.
19 Defendants sell and/or otherwise provide these individuals with the infringing WaveLight
20 FS200 system for LASIK procedures. Defendants also market these products for
21 infringing uses. Defendants have obtained FDA approval for infringing uses. On
22 information and belief, Defendants directly or indirectly create and provide manuals,
23 brochures and/or other documentation instructing and enabling infringing uses.
24 Defendants intend that the products be used in a manner that infringes the '199 Patent.

25     60. Defendants have contributed, and continue to contribute, to infringement of
26 the '199 Patent by eye surgeons, other medical professionals and/or other individuals. As
27 detailed above, Defendants' products, including the WaveLight FS200 laser, are used for
28 practicing methods covered by the '199 Patent. The infringing products embody a

material part of the claimed invention of the '199 Patent, and Defendants know that these products are especially made and/or adapted for such uses that infringe the '199 Patent. The accused products, including the WaveLight FS200 laser, are not a staple article or commodity of commerce suitable for substantially non-infringing uses. Defendants intend that the accused products, including the WaveLight FS200 laser, be used in a manner that infringe the '199 Patent. Defendants have obtained FDA approval specifically for infringing uses.

61. Defendants' infringement of the '199 Patent has been and continues to be willful. Defendants know and have known of the '199 Patent. Defendants and/or their affiliates have been aware of the '199 Patent since at least 2010. Alcon Labs has known of the '199 Patent at least since the acquisition of LenSx Lasers, Inc. by Alcon, Inc. in or around August 2010. Defendants and/or their affiliates also closely followed the reexamination proceedings of the '199 Patent. Defendants have subjectively known their products are infringing the '199 Patent, and Defendants have proceeded despite an objectively high likelihood that a court would find the products to be infringing.

62. Defendants do not have a license to use the '199 Patent. Indeed, Defendants and their affiliates have never had any rights to use the '199 Patent for the performance of LASIK procedures.

63. Defendants have gained profits by virtue of their infringement of the '199 Patent.

64. Dr. Neev has sustained significant damages as a direct and proximate result of Alcon Labs' and WaveLight's infringement of the '199 Patent.

65. Dr. Neev will suffer and is suffering irreparable harm from Defendants' infringement of the '199 Patent. Dr. Neev has no adequate remedy at law and is entitled to an injunction against Defendants' continuing infringement of the '199 Patent. Unless enjoined, Defendants will continue their infringing conduct.

## Demand for Jury Trial

66.     Plaintiff hereby demands a jury trial on all claims, damages and any other issues presented herein that are triable to a jury.

## Relief Requested

WHEREFORE, Plaintiff Dr. Neev prays that the Court enter judgment against Defendants Alcon Labs and WaveLight and in favor of Plaintiff as follows:

A.     Judgment that Defendants have infringed one or more claims of the '199 Patent;

B.     An order and judgment preliminarily and permanently enjoining Defendants and their officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their parents, subsidiaries, divisions, successors and assigns from further acts of infringement of the '199 Patent;

C.     A judgment awarding Plaintiff all damages adequate to compensate for Defendants' infringement of the '199 patent, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

D.     A judgment awarding Plaintiff all damages, including treble damages, based upon willful infringement, pursuant to 35 U.S.C. § 284, together with pre-judgment and post-judgment interest;

E.     Judgment that the case is exceptional and an award of reasonable attorneys' fees, expenses, expert fees and other costs incurred in this action under 35 U.S.C. § 285;

F.     Judgment awarding costs of suit.

G.     Such other relief as the Court determines to be just and proper.

DATED:  February 27, 2015                         RUTTENBERG IP LAW, PC

By: */s/ Guy Ruttenberg*
GUY RUTTENBERG
Attorney for Joseph Neev