1
2
3
4
5
6
7
8      UNITED STATES DISTRICT COURT
9      CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH NEEV, | Lead Case No. SACV 8:15-cv-00336-JVS-JCG |
| Plaintiff, | |
| v. | **ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |
| ALCON LABORATORIES, INC., a Delaware Corporation; and WAVELIGHT, GmbH, a German Corporation, | CONSOLIDATED WITH: 8:15-cv-00624-JVS (JCGx) |
| Defendants. | |
| AND RELATED COUNTERCLAIMS | |

ORDER RE: DISCOVERY OF ESI

1.    SCOPE

      1.1     This Order streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

      1.2     This Order may be modified in the Court's discretion or by stipulation.

      1.3     As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26.  Likewise, a party's nonresponsive or dilatory discovery tactics will be cost-shifting considerations.

      1.4     A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

2.    FILE FORMAT

      2.1     Other than as set forth in Subsection 2.6 below, all Electronically Stored Information ("ESI") will be produced in single page TIFF or JPG image with corresponding load files that identify the beginning and ending production number of each document, and any applicable confidentiality designation. TIFF or JPG images will be accompanied by load files. The load files will include beginning and ending production serial numbers and confidentiality designations for each document. Each party will also produce corresponding native file text extraction or optical character recognition (OCR) files for its document production.

      2.2     If a document is more than one page, the unitization of the document and any attachments or affixed notes will be maintained as they existed in the original document.

      2.3     In producing documents kept in paper format, multiple documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).  The parties will make their best efforts to have vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents.

- 1 -

2.4     Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved. For example, if a party is producing an e-mail that has attachments, the attachments should be processed in order behind the e-mail. Parent/child relationships will be maintained using the BEGATTACH and ENDATTACH metadata fields.

2.5     The Parties will produce the metadata fields listed in Schedule A, attached hereto.

2.6     ESI will be produced in its native file format if (a) the requesting party can show a need for specific ESI in its native format and it would not be unreasonable, unduly burdensome, or expensive for the producing party to provide the ESI in this manner; (b) the ESI is in a multimedia form (e.g., sound, animation, or video); or (c) the file is of such a format that the producing party reasonably believes that production in native format would save time or expense, or that production in TIFF or JPG format would compromise the document's utility (e.g., large spreadsheets).

3.     DOCUMENT MAINTENANCE AND PRODUCTION

3.1     The parties need not employ forensic data collection or tracking methods and technologies, unless the requesting party raises a specific, good faith concern over authenticity or spoliation.

3.2     The parties need not preserve or produce metadata (as used herein to refer to electronically stored information about a document that does not appear on the face of the original document if emailed or printed) other than the fields listed in Schedule A hereto.

3.3     Materials retained primarily for back-up or disaster recovery purposes need not be preserved, searched, or produced, and the Parties need not deviate from any back-up schedule or other practice they normally follow with regard to preservation of such materials (e.g., recycling of back-up tapes conducted in the ordinary course of the Parties' business operations is permitted), except upon a

showing that specific responsive information may have been lost, destroyed, or inadvertently deleted other than in accordance with a document retention policy, provided however that the party takes all other reasonable and necessary steps to ensure and comply with its obligations and duties to preserve evidence. Absent a showing of good cause, voicemails, text messages, instant messages, PDAs, and mobile devices are deemed not reasonably accessible and need not be collected and preserved.

3.4    A producing party is not required to produce multiple copies of the same document, absent a showing of good cause that the production of such additional copies is necessary, except where the document is part of, or attached to, another document or has been modified.

3.5    The parties are not required to include in their privilege logs documents that were created after the filing of the Complaint in the action, provided that in the event that a party waives attorney client privilege (or any other applicable privilege) as to a document or documents created after the filing of the Complaint, then such party shall expeditiously supplement its privilege log to include any documents created after the filing of the Complaint that are related to the subject matter contained or referenced in the documents as to which privilege has been waived and which that party continues to withhold based on an assertion of privilege.

3.6    The parties to this action may use any discovery, testimony and other materials produced or generated in connection with the arbitration captioned *Alcon LenSx, Inc. v. Joseph Neev*, JAMS Case No. 1200046131, and related proceedings (collectively, "the Arbitration") as if it was provided or generated in this matter.  The parties will treat any material designated as Confidential or Highly Confidential in the Arbitration as if it was designated at the same level of confidentiality under the parties' Stipulated Protective Order in this action. The use of the Arbitration materials is not a concession, admission, or waiver of any objection, including any objection on

privilege, relevance or admissibility grounds, to the use of the identified materials in pretrial proceedings or at trial, and is contingent upon production of the Arbitration materials – including all ESI, email and other forms of electronic correspondence produced during the Arbitration – to Lawrence Livermore National Security, LLC ("LLNS") within fourteen (14) calendar days of this Order.

4.      ELECTRONIC CORRESPONDENCE

4.1      General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall be deemed not to include email or other forms of electronic correspondence (collectively "email"). To obtain email parties must propound specific email production requests.

4.2      Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.  Email already produced as part of the Arbitration materials shall be produced to LLNS and may be used by the other parties to as set forth in Paragraph 3.6, i.e. no Arbitration email shall be withheld pursuant to this Order.

4.3      Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances.

4.4      Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe.

4.5      Each requesting party shall limit its email production requests to a total of five custodians per producing party.  The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request.

- 4 -

005043-12 829257 V1

4.6     Each requesting party shall limit its email production requests to a total of five search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave.  The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The Court encourages the parties to confer on a process to test the efficacy of the search terms. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, this shall be considered in determining whether any party shall bear all reasonable costs caused by such additional discovery.

5.      <u>PRIVILEGED MATERIAL</u>

5.1     Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of a privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding. Subject to Federal Rule of Civil Procedure 26(b)(5), if any privileged material is inadvertently produced in this matter, the party may claim it back by requesting return in writing. Upon receipt of such request, the receiving party shall return the items identified and retrieve and destroy any copies which were made.

1  Nothing in this order shall preclude the receiving party from challenging the assertion of

2  privilege.

3

4  DATED: November 19, 2015    _____

5                                                      Hon. Jay C. Gandhi

6                                                      United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

005043-12  829257 V1

- 6 -

## SCHEDULE A

| Field Name | Description of Fields |
| --- | --- |
| BEGDOC | Beginning Bates number assigned to the document |
| ENDDOC | Ending Bates number assigned to the document |
| PROD_VOLUME | Production volume |
| BEGATTACH | Beginning attachment bates number |
| ENDATTACH | Ending attachment bates number for all attachments |
| FILEEXT | File extension of original document |
| CONFDESG | Confidentiality designation |
| NATIVEFILE | Native file link for files produced in native format. |
| DATESENT* | Date that the e-mail was sent (MM/DD/YYYY) |
| TIMESENT* | Time the e-mail was sent (HH:MM:SS) |
| DATERECEIVED* | Date that the e-mail was received (MM/DD/YYYY) |
| TIMERECEIVED* | Time the e-mail was received (HH:MM:SS) |
| EMAIL SUBJECT* | Subject of the e-mail |
| TO* | Persons who received the e-mail |
| FROM* | Persons who sent the e-mail |
| CC* | All cc: members |
| BCC* | All bcc: members |
| REDACTED | 'Yes' if document has portions redacted |
| MD5HASH | MD5 hash value of document** |
| SHA1HASH | SHA1 hash value of document** |
| *apply only to email | |

005043-12 829257 V1